The first is Ascent v. Ascent Classical Academy. This is 25-1132. We'll be delighted to hear from Mr. Gessler. Thank you, Your Honor. My name is Scott Gessler. I represent the Appellant Ascent Classical Academy, to whom I shall refer to as Ascent in my argument. This case is primarily a case of contract interpretation. And the relief we're asking is that this Court reverse the lower court's contractual interpretation, provide the correct interpretation, and then remand for factual findings to determine what, if any, in the extent of trademark infringement, intellectual property infringement exists. So that's what we're asking. In the contract here, basically the way it was structured is Ascent kept all of its, all of the current and future intellectual property except for one limited carve-out. So there were four contracts, each of which was identical. And in each one of those contracts, the charter schools, ACACS, retained the right to use a trade name, Ascent Classical Academy of Douglas County in the first contract, and then, of course, different specific trade names in the three subsequent contracts. And a trade name is a specific name for a specific school. And that's what ACACS was able to retain and nothing else. The Court, of course, rejected this approach and committed four errors in its analysis. And let me treat each one individually. First, when you look at the Court's analysis, the Court had an improper reading of the word, the legalistic pronoun, the same. So basically, the language itself says, however, the name Ascent Classical Academy of Douglas County shall be a trade name of the school, and the school shall have the right to use the same. So the question is, what does the same refer to? Well, the Court said the same refers to name. And that's just, frankly, incorrect. On a common interpretation, last antecedent, the same refers as a pronoun, legalistic pronoun. It refers to the most recent item in a list. And that most recent item was the last one, trade name. So when it says the right to use the same, the same refers to the trade name. And, of course, a trade name in the Lanham Act is clearly defined as a specific name for a specific school. And we cite, you know, modern English usage and textual analysis, Garner and Scalia, which I believe the appellee has cited as well. We both like, apparently, that source. So that was the first error. The second error is that the Court said, well, when you look at the name of a school, that's much different than trade name. And, in fact, structurally, that sentence, the name is equal to the Ascent Classical Academy of Douglas County, which is equal to the trade name. Logically, that is the analysis. So if you break down or outline the sentence, you would say the name shall be a trade name. As a lawyer, sometimes I like to use the word, well, shall comprise or shall be constituted. You know, it makes me sound a little more educated. But shall be is about as direct as it gets. The name shall be a trade name. So name and trade name are one and the same. What do you make of the fact that the parties chose to employ the word a trade name instead of the trade name? I think it's, in this instance, whether it's the definitive or indefinitive use, it's irrelevant. Doesn't a suggest, as opposed to the, that there are several? There very well may be. And this is one. There very well may be. The ACACS may say, we want to also get a trade name called Rocky Mountain Academy. Something different. And that doesn't involve Ascent. It doesn't involve Ascent's intellectual property. What does involve Ascent's intellectual property is Ascent Classical Academy of Douglas County. And that is what is being conveyed here. Shall be a trade name. Whether it's the trade name, in other words, whether ACACS only has that as a trade name, or whether they have other trade names, is irrelevant for this contractual interpretation. I don't think you're asking us to say, with respect to the error that you claim on the phrase the same, I think what you are saying today is that it's at least ambiguous. You're not saying, you're not asking us, or are you telling us that as a matter of contract interpretation, the same here means something different than Judge Gallagher said? I'm saying it means something different, absolutely. As a matter of law. As a matter of law. As a matter of contractual interpretation. The same refers to trade name. It is the last antecedent. If you look at Garner, and the same has a long pedigree. I know it's been treated poorly by many commentators, but it's been used since the 14th century. Shakespeare used it in Comedy of Errors, and as Garner noted, it's used in Article II of the Constitution for succession of vice presidents when a president is unable to exercise various powers of the office, and it is the same. The same refers to office. And that's the way it is commonly and consistently, and I would say almost uniformly, interpreted. But, I would also add that even if it were to refer to name, name shall be a trade name. Name is a classical academy of Douglas County. They're all one and the same. The name is a very specific defined term, using quotation marks, which is a trade name, or shall be is the phrase they use. So we don't have to rely entirely upon the last antecedent principle for determining what the legalistic pronoun the same refers to. But that in and of itself is sufficient. Yes, ma'am. Can I follow up on that question? This was a dismissal, right? Yes. And the basis of the motion to dismiss was the interpretation of the word use. Well, the interpretation of this particular paragraph K. I believe it's R, but yes, ma'am. Yeah. Whatever it is. Yeah, sorry. Yeah, R. But, I mean, don't we just have to say, well, we disagree with the interpretation and the district court erred in dismissing it? Why would we need to actually interpret it at this point? Because. Isn't that a summary judgment question? Wouldn't you file cross motions for summary judgment at some point? I don't think so. You haven't asked for judgment at this point. No. You're basically asking us for judgment, aren't you? We interpret the contract in the fashion that you would like. This is an important factor, but I don't think it resolves everything. Because what we're really asking for is. I'm just asking, do we need to say, I mean, can we say the district court erred in interpreting a contract in this manner? Yes. And remand. I mean, either way, we're going to remand, I presume, is what you're. I hope. Well, I mean, I'm just saying. Yes. You seem to be asking us for more, which is an interpretation in your favor that, obviously, you haven't asked for yet. We are asking for that. And this Court is. And contractual interpretation is a matter of law. Well, this is an appeal of a. Well, Your Honor, I guess our point is contractual interpretation is a matter of law. Sure. That's something for the courts to do. It normally doesn't come at a motion to dismiss stage. Usually you have cross motions for summary judgment on a contract interpretation. Well, we'd like to get as much as we can out of you, Your Honor. I'm sure you would. So to the extent you're willing to. I just think Judge Shelby's question was really rather well taken, and I was interested in the response.  I mean, we think that the meaning of that contractual term is clear and that this Court is equipped to be able to make that decision based on the language of the contract itself at this point and to reverse the Court's interpretation, not merely say, well, it's not what the lower court said, but it could be something else. I think a necessary implication of that is you contend that this language that's in dispute in the contract is unambiguous. That is correct. And the Court did not make an ambiguity finding. So that's one area where we would likely agree with the Court that it is not ambiguous. We agree. I don't think there's a dispute. The parties don't dispute the state of Colorado law on the question. When we're construing the contract, we consider the subject matter of the contract, the object of making the contract, the sense in which the parties understood, stood the language at the time the contract was made, the purposes and objects, all of that, right? Correct. So I know that you're in a structure of the four errors, and I'm going to pull you right out of that. But when we look at the rest of the contract, so the subject matter of the contract, the object and the like, isn't your construction in tension with the rest of the contract? Not at all. What about the property rights provision in the contract, for example? Like, what sense does it make to say that the teaching materials, the physical property, the other items that the school has, all of which may bear any number of marks that may be different from the part in quotations in paragraph in R, does the school get to keep it, and they just can't use the equipment if it's marked with, say, initials? It would likely require some form of rebranding. Right. It's very clear with respect to intellectual property. I mean, it states intellectual property, and the relevant section of section 3R, which is a pretty long section, it includes the phrase, no other use of assent trademarks is permitted without assent prior written permission. The school shall acquire no rights. All goodwill of assent trademarks shall endure to the benefit. I think your argument is stronger on intellectual property for sure. And that's what we're talking about. Which is why I want to focus you on the physical property. The contract seems to grant something that you maintain. Your interpretation of the contract would take away. I think it would likely read out of the contract the provision that says keep all the T-shirts and the gym equipment and the chairs that are marked with the initials instead of the full written name, the whole name in contract, seven words. Anything that you have that isn't marked in seven words, you need to rebrand or destroy. And if you can't rebrand it, you destroy it. Otherwise, it's a trademark violation. So what's the purpose of that provision in the contract if the parties mutually understood and intended that you couldn't use any of it? Well, we would disagree that the two are inextricably bound, that one can separate physical property with intellectual property. But I would also point out, if I may, just real quick, that's not a proper form of this point for a motion to dismiss. We're looking at the specific contractual term, not the consequences of what would happen if, in fact, trademark infringements are found. No, it's a reading in the context of the subject matter of the contract, the contract in its totality. And I think contract law would tell us to consider other provisions in the contract and not to adopt a construction that would write part of the contract out. Is that true? As a general proposition, I'll accept that. But the totality in this instance is particularly weak, I would submit, that those arguments that you're positing are particularly weak in light of very clear and explicit language that talks about all of the IP is kept by assent except for a very specific limited carve-out. I don't mean to monopolize the argument, but I'm going to jump to your fourth point. I think the fourth point of error you're going to tell us is when Judge Gallagher considered common usage among high schools and other schools throughout the country or other institutions and organizations, and you say it's error. He considered facts outside the record. But how do you consider a judge's common sense under Rule 12, but also the subject matter, the object of the contract and the like, if you just say a judge can't take notice of things in the world when evaluating what it makes sense in the context of the party's language? Technically, that's my third point. Okay. But I appreciate it. Fair. If I may answer. I know my time is short. Very quickly. As my children tell me all the time, my hair is gray and I'm old and we live in a different world. The judge, I think, has looked at an outmoded analysis. He says, look, central, schools are always, this is how schools always work. And he said the law of candy bars is different than the law of schools, which has no support in the record. But he says, and he uses the word customarily. He says, you know, schools customarily identify themselves. Under black letter law in Colorado, that type of customary usage is a factual matter, not subject to the judge's whims. But I would also say this. The judge's mode, probably as mine is, is somewhat outdated. We may have grown up, I think the judge is around my age, in a world, for example, in Denver, where you had North High School, South High School, East High School, West High School. But that's not the world we live in today. The world we live in today has the charter schools, they have four schools that they seek to brand all over the metropolitan area so that when families say, hmm, what should I do, where should I send my children, they know that that charter school has a particular approach and brand that they can trust. Likewise, Ascent, as a management company, says, when we manage a school, we do this, that, and the other. We vet our teachers, we provide this type of curriculum, these types of materials, we have this type of discipline, we provide that product and service. And they're a management company. This world of school choice is far different than what this judge assumed. And the judge made factual assumptions that go far beyond common sense. When we talk about common sense and experience, we're talking about a judge's common sense to understand inferences within the bounds of a complaint as to whether those certain allegations logically will support a complaint. That's what we mean by a judge uses its common sense at this stage of the pleadings. Not that the judge makes statements like unvaried reproduction of a full legal name is not and never has been how school names have been used and never has been as a broad standard. Do we not all understand the University of Southern California is known as USC and the University of Virginia goes by UVA? And is that not just what the judge was observing? No, that's not at all. When he's referred to central as an abbreviation for some high schools, that's not the same concept? That's fact-finding? That is completely fact-finding and not at all. Look, the word central is a geographical location. I mean, the world certainly I grew up in, I submit maybe the judge grew up in, I mean, we didn't have all this school choice. We went to a neighborhood-based school that normally had a geographical designation. And that's how it was referred to. And you didn't have these issues of intellectual property rights because you didn't have this level of school choice, which I would submit. And I know we're painting outside the lines a little bit. I mean, about 20, 25 percent of all Colorado children attend either a charter school or a private school. And so these intellectual property issues do matter. And it is much different than what this judge painted as a picture. They are factual findings. They look at customary usage. I do have actually a question. Yes, sir. For a license, does the licensor need to retain control over the quality? I'm sorry. Can you say that again, Your Honor? If I license Bob Bacharach dry cleaners, the use of Bob Bacharach dry cleaners to you, to characterize that conveyance of your usage, your right to use the name Bob Bacharach dry cleaners, do I need to retain control over the quality in order to maintain that characterization as a license? I don't think quality is one of the conditions. Usually it's confusion in the marketplace. So a license, are you familiar with the term naked license? I am not, Your Honor. All right. What I would say is what we're looking at here is the licensing of a trade name, not a trademark. That begs the question. So if a license, I don't want to belabor it because if you're not familiar with the term, you're not familiar with the term. But if a licensor has to retain quality control in order to maintain characterization as a license, and if a cent had conveyed the right to use the trade names, even after termination of the agreement, I don't know how a cent would be able to treat the conveyance of the right to use the trade name as a license, even though it uses the word license and then a non-transferable license. I just question whether or not the use of the terminology was incorrect as a matter of law, but it was really an assignment, a transfer of ownership of the right to use the name. In my situation, Bob Ecker at Dry Cleaners, and if it was an assignment, you would lose, right? If it was an assignment of the right to use the name of the schools, then they would have the right to use whatever variant of the name that they would like to use, right? No, Your Honor. That is not correct. And if I may answer. If it's an assignment? It's not an assignment of a trademark. There is a difference between trademark and trade name, Your Honor. Okay, but an assignment is an assignment is an assignment. If it is an assignment of a trademark, are you saying that the new assignee of the trademark has no right to use any variations of the name trademark, even though that entity owns as the assignee of the trade name? If I may, Your Honor. That is not our argument because we have never argued or contemplated that there was an assignment of a trademark, only a trade name. And if I may just squeeze this in here. It's the opposite of what your argument is. Right. So what our argument is, is trademark stuff. I know what your argument is. A trademark is different than a trade name. I know that. And a trade name is a specific name that can be used for a specific school or a specific business. In this case, a specific school. Now, a trademark or a logo or advertising material may incorporate a trade name or it may not. In this instance, the only thing that assent granted through mutual agreement of the parties was a trade name to be able to use, be used with the school itself. If I, let me, I understand all that. But if I assign the trade name Bob Baccarat Dry Cleaners to you, I say have at it. You're the assignee. You use it. And you use the name Baccarat Dry Cleaners. Have you deviated somehow from the right to use the trade name even though you are the full owner, the full assignee of the trade name Bob Baccarat Dry Cleaners? Yes, you have. And the reason why is if you say Bob Baccarat Dry Cleaners, show up here today. We got a nice logo. Come join us. That is a trademark. That is not a trade name. Now, the name is being used as a trademark. The trademark incorporates that name. If you register with the Colorado Secretary of State or the U.S. Patent Office or your chartering authority as a school and you say I am the Bob Baccarat Dry Cleaners, that is my legal name and that is the name of the entity under which I pay taxes and I register, that is a trade name. All right, so what you're saying is that if it was an assignment of a trade name, you lose. But you shouldn't lose because it would be an assignment of a trademark. Is that what you just meant? When you say the you lose. I'm just trying to figure out how your answer fits into my question. I'm struggling my best to help you out, Your Honor. I asked you a question about an assignment of a trade name. Correct. But you used, I would submit, your examples as part of that question were actually trademark examples, not trade name examples. I know that respectfully. I mean, I heard you say that. So if it was an assignment of a trade name, I know you're resisting the premise, but if it was an assignment of a trade name, Bob Baccarat Dry Cleaners, then they would have the right to use any variation of the, you would have the right to use any variation of the name Bob Baccarat. You would be able to use Baccarat Dry Cleaners, Bob Dry Cleaners, whatever. But that's not, but you're saying that that conveyance could not have been the conveyance of the trade name. It would be the conveyance of a trademark, right? Correct. If it were used in that capacity. I'm starting to figure out what your answer to my other question relates to my question. So the answer to your question is that, well, if I assign Bob Baccarat Dry Cleaners to you, then that is the assignment of a trade name, and you would be circumscribed in your ability. You couldn't use Baccarat Dry Cleaners. You could use Bob Dry Cleaners because it was the assignment of a trade name as opposed to a trademark. It was the assignment of the ability to use the exact same formulation by Baccarat Dry Cleaners. That is correct, Your Honor. And I believe the trial court found that conclusion repellent and therefore included extrinsic evidence as a way to interpret the word use. I understand. We're ready for the ability. Thank you, Your Honor. Good morning. May it please the court. My name is Eric Hall, and I'm here on behalf of Ascent Classical Academy Charter Schools and Land's End. And, Your Honor, I'd like to pick up with the interpretation of the contract because these are Lanham Act claims, three Lanham Act claims, but they do turn on the interpretation of the contract. With all due respect to my opposing counsel, I want to direct the court to the places in the contract where it actually talks about what has – what was conveyed to the schools, my clients, upon separation. So, again, my friend on the other side says that nothing was conveyed except the specific name in its entirety without alteration. Respectfully, that's incorrect. In fact, if you look at Article 3, Section Q, that – on Joint Appendix 94, that states that the financial, educational, and student records are all school property. So, upon the separation, those items, the financial, educational, student records, went with the school. Similarly, Article 3R, the intellectual property provisions, at Joint Appendix 94, so this is at the beginning of them, it recites there that all the intellectual property of the educational materials that the schools paid for belonged to the schools. So if the schools paid for the curriculum guides, if the schools paid for, you know, how to teach U.S. history, that intellectual property belonged to the schools. They could keep it. Similarly, on Joint Appendix 95, also under Article 9 – pardon me, Article 3, Section R, it talks about the school actually has a right to continue to use the ACA, the assent educational materials, so long as the schools continue to use them in the regular course, i.e., as they had been using them prior to the separation. So, again, even if some of the educational materials were intellectual property of ACA, assent, the schools could continue to use those as long as they were using them in the regular course that they had been using them before. Similarly, when you look at the termination provisions, Article 8, Section B2, and, Judge Shelby, this is to your point, that B2 section says that the materials that were paid for by the schools and owned by the schools, that the parties agree are owned by the schools, like the desks, the computers, the basketballs, the gym mats, the uniforms, all those things, the schools get to keep them. And so there's a separation. The schools get to keep all that stuff upon the separation. All of that needs to be understood when you then look at that key provision at the end of Article 3, Section R, that talks about the school names. Because that last sentence of 3R that's so crucial here says, essentially, the schools get to, the schools are assigned, Judge Becker, to your point, the schools are assigned this trade name, their trade name, and they can use it in perpetuity without any further payments to assent. Why aren't those provisions of the contract that you just referred to about materials and that sort of thing, why aren't those just pretty clear exceptions to this rule? Which is, you can't use anything post-termination except the trade name that you already have, period, end of story. Everything else is off limits unless you pay us more money. For instance, if you're going to get new desks or new jerseys or new whatever, you're not going to be able to use anything other than this name, this trade name, unless you want to pay for it. Everything else we've told you under the contract, you can keep all this other stuff with our names, with our trademarks and trade names, but that's only for everything you have as of today or as of the end of the contract. Why isn't that the very simple way to read that? Judge Moore, I think the simple way to read the contract is this is a contract that divided both intellectual property and other property that made it account for what the parties were going to have upon separation. And then upon separation, the schools were going to keep a substantial amount of things, and ACA was going to keep other things, and it could go sell its management services to other charter schools in other places. But the schools could continue to operate as they had been operating, including continue to use their trade names, their names, as they had been using those names, including with all the permutations and abbreviations that they've been using them for. Well, that's the part that it doesn't seem to say to me. And to me, what you just explained, which is, yeah, of course they're going to keep materials. They're not going to have to buy new desks, new everything. New everything. But that's the end of that. If they do buy new post this, you've got to compensate us for it, period. It doesn't seem that complicated. Well, Judge Moore, my point is the assignment, the grant of permission at the end of 3R says that the schools get to continue to use their names. And they are names. As Judge Gallagher— It says a trade name. And in this case, the one we have here is the Central Classical Academy of Douglas County. It's a trade name. A trade name. It's in quotations. I think that's a reasonable reading to think that that is what you get to use, that trade name that you already have. It's not really conveying anything. That's right. But we get to use the trade name as we had been using it, which includes abbreviations and permutations. It doesn't say as you have been using it. It has it in quotations. Correct. And it makes it clear if you're going to use it in the future, you're going to have to pay for it. If you're going to use permutations of that or other, or if you're going to use trademarks and trade names that don't belong to you, you're going to pay for it. Again, Your Honor, I believe the quotation— I'm saying isn't it a reasonable interpretation, and we're at the motion to dismiss stage of the contract, that it divides before and after just exactly like it appears. You've got a trade name. You can continue to use that. It's in quotations here. Everything else belongs to us, except what we've accepted out, apparently, in the contract. It's already existing on materials, on physical property, essentially. Yes, but, Your Honor, if ACA's argument prevailed, then, like Judge Shelby was pointing out, then essentially this grant of permission would actually be a prohibition because it would be completely unworkable for the schools to then say we need to now modify all these items that we own. No, because you said there's an exception for those. They can continue to use those materials. Well, Judge Moritz, what I'm saying is the way the agreement actually reads is it essentially incorporates what I think of as a non-disruption principle. In other words, the schools get to continue to operate as they had been operating, and there's a separation. But to be forced to change all the instances of the school's name with the full legal name— I think you're agreeing that it's ambiguous. I mean, you two both have completely opposite views of this, and you may be able to go both ways, but it sure does seem ambiguous, and it's certainly possible it doesn't mean what the district court said it meant, and the district court did use evidence of custom, which was, you know, arguably not appropriate at this stage. So I do agree with my friend on the other side in saying that, one, interpretation of contracts is a question of law, that this court can do, that any court can do. Facts don't come into that. And, two, that there is no ambiguity in the contract. I think the contract very clearly indicates that the schools can continue to use their names as they had been, which means they don't need to rebrand. Well, you may think that. I'm telling you it may be ambiguous. And what is your answer if it's ambiguous? You presumably, the motion dismisses improperly.  Yes, Your Honor. If this court believes it's ambiguous and believes that it needs to be sent down for more factual finding, it of course could do that. I don't disagree with that. But, again, at the end of the day, it's still going to be a question of law as to what this contract means. Well, the problem that we have with the question of law, as you say, is the district court went outside of the four corners of the document here and definitely used what he viewed was customary practice, which to me goes way beyond common sense of the judge. What is customary practice? I don't know. But you certainly would need some evidence of that. In any event, that goes outside the four corners of the contract, possibly. And so we have a problem with the district court's interpretation. Respectfully, Your Honor, I disagree. I know you do. I'm just saying it is a problem to go outside and rely on evidence that's outside the four corners of the contract. I think the Court was entirely appropriate to say this is a question about a school name, and school names are used as a matter of common sense in a whole variety of uses. You didn't say common sense. You said he said customary and custom. There's a big difference between custom and common sense. But any time any court is reading a contract, it is allowed to consider all the various factors that Judge Shelby discussed, including saying, well, in a school name, how are names used? How are any names used? Names are used with abbreviations and permutations all the time. It's completely unworkable to think that anyone, including a school, is going to use the full legal name in its entirety without alterations every time it uses a name. And that was the only, just like Judge Shelby was saying with UVA and USC, or with this Court. You didn't even make this argument about custom below, right? I believe you didn't. Your Honor, I said that the Court could read the contract and Right, but you did not make this argument about custom, and I assume you stayed away from it for a reason. Your Honor, I did make the arguments that said that when a court is interpreting a legal agreement, that it can use its common sense, just like I'm saying custom here. Well, just like Iqbal says, the question is plausibility. The question is, are these Lanham Act claims plausible? And my argument has always been the idea that what the parties agreed to was that this particular trade name must be used in the full legal name in its entirety without alteration every time it uses a name. I understand your argument, but that's different than what the district court did here. You did not argue below that you district courts should consider the fact that courts use all, or that schools use all kinds of variations of names. You didn't talk about custom and usage. You talked about your view of this contract, basically. Because, Your Honor, I think that's all that's You stayed within the confines of the contract, is what I'm saying. Correct, Your Honor. And the district court Your view is that what's in quotations, you can use any of those words within the quotation, right? Because the usage That's different than saying schools all the time use shortened versions, nicknames, all kinds of stuff. That's a custom versus saying my position is those words within the quotations are what we can use, what permutations that we can use. Quotation marks are one indicator of meaning, Your Honor. Just like context and everything else about a written legal document are indicators of meaning, and I think it was entirely appropriate for the court to say, I'm going to consider the quotation marks and the context and the other provisions in the contract all to make a commonsensical determination that it would be unworkable for the schools to use the full legal name every time. Therefore, that is an implausible, these are implausible Lanham Act claims. And, again, when you keep in mind that the underlying principle of the Lanham Act is unfair competition, this case does not go to unfair competition at all. The only thing that happened here is the parties separated and the schools continued to operate as they had been operating using their names, which, again, they own, pursuant to 3R, and they said, oh, no, these are trademark violations because you have to use the full name every time without questions. What work do the quotation marks do in the contract, then? What's the purpose? They distinguish them from other schools that might open in other locations. So the complaint discusses how these parties worked together to open a series of schools, a network of schools. Douglas County first, Northern Colorado second. They tried to open one in Boulder. It failed. They tried to open one in Durango. It failed. They opened one in Grand Junction and in Northern Denver. The quotation marks indicate the names for the successful schools. Those are the trade names. And those names the schools can keep and continue to use and continue to use on assignment as they would like, as they had been using. But you can't go and get another school in Colorado Springs or in Pueblo or in Greeley and call it a Saint Classical Academy of Pueblo. And if you do, then there would be a question between the parties as to whether that would be some sort of violation of either the contract or trademark law. But again, the quotation marks, if what the parties intended was that the schools were going to have to use the full legal name without alteration, they would have to use more than quotation marks. They would need to say things in the termination provisions like, and all these items that you schools get to keep, they all need to be rebranded. And all the intellectual property that you have, that all needs to be rebranded too, because you have to use that full name. And like the court observed, it is commonplace for not only names to be used in abbreviations, but also to schools to have lots of different permutations of their names on all their items. And that would be the opposite of what the parties agreed to here. And so the court correctly concluded that is an unreasonable reading of this contract, and that is an implausible, those are implausible claims, and therefore the motion to dismiss was granted. And Your Honor, I think that that was the correct reading, and this Court should affirm. Unless the Court has any other questions, I will sit down. Do you have any questions? I do have questions. So you earlier, and I just, I don't want to beat a dead horse, but I want to get to this concept of distinguishing or not, between an assignment and a license. So there's two buckets, assignment versus license, and trademark versus trade name. If the conveyance was an assignment, not a license, of a trademark, would that be affected by, assuming that it's an assignment, not a license, by the characterization as a trademark versus a trade name, or would it matter? So let me answer both, Your Honor. First, the assignment and the license. So as to the assignment, if it had been an assignment of a specific trademark, in that hypothetical, then arguably that might have constrained the schools and their use of it, because the schools would have known, this is the specific trademark, and we cannot vary from this trademark that's been assigned to us. That's not what happened, right, at all. What happened was, I think the end of 3R was an assignment of a trade name, and they said, schools, you can use, we're assigning you your name for you to use without further compensation to us, and so you can go ahead and use it, which means the schools reasonably thought, oh, well, then we can continue to use our names as we have been using our names, which would include things like, I'm going to say on my basketball, Ascent-DC, because writing Ascent Classical Academy of Douglas County on every basketball and gym mat and school uniform and athletic uniform is just unworkable. So the schools could continue to do exactly that. As to your license question, Your Honor, yes, you're right. When you look at that last paragraph of 3R, the beginning talks about licenses, and when the parties were still working together, then ACA had a license to us that we could use any and all of their trademarks or trade names, whatever they were. Once the agreement terminated and that license ended, that's fine. But that beginning about licenses is different than the end of 3R that says specifically that ACA granted to us our trade names that we could then use. So it originally was, in fact, a license because Ascent did exercise quality control, had control over the conveyance of both the trademark and the trade name, but once the relationship soured and terminated, the last sentence you're saying transformed the relationship into one of an assignment and no longer a trademark, but a trade name. Not quite, Your Honor. I'd say just slightly differently than that. What I would say is when the parties entered into these management agreements together, they understood that, that last paragraph of 3R, as it's written, was that when the parties were working together, then there was a license. But once the parties separated, then the ACA said to the schools, you own the names. You own your names. Go ahead and use your names as you want, because we don't want to make you rebrand. If they wanted to make us rebrand, then these would have been written differently. But they said, just continue to use your names as you have been using your names, just like you can continue to use your educational materials, your student records, your basketballs, all the things that belong to you. You can keep those and continue to use those. That's all consistent, and that is inconsistent with my friends' reading, which is, oh, you get to leave, but every time you use your name after we separate, you must use the full legal name in its entirety without alteration, which is completely unworkable. And therefore, I believe, an implausible reading. Okay. Thank you. Thank you. What I'd like to do is, I mean, both sides have gone over time. Nobody fought. We just had a lot of questions. But I am going to go ahead and give you a minute and a half, ask you not to, you don't have to take it. But if you have a minute and a half of rebuttal to clarify anything, you're welcome to do that. Thank you, Your Honor. Being a lawyer, I will happily embrace any additional time I can have. I would just like to focus on the trademark versus trade name, and I think there's some confusion. What we tried to do in our brief is sort of demarcate the differences between the two. And a trademark is sort of a source identifier. You use it to brand yourself with a product or a service, or if you use a service mark. Trade name is more of a specific name for a specific business. It's a business identifier. So the import of it is you don't put, if you put a trade name on a basketball, you're not using it as a trade name. That's a trademark. It's out in the public. It has been released into the wild where people can see it and use it and associate it with quality or lack of quality or certain characteristics. And the reason why is we would submit, you know, a trade name in this instance. The charter school is chartered by a chartering authority under a specific business name, and that business name is Ascent Classical Academy of Douglas County or the other Ascent Classical Academies. And if that name changes, it requires certain cumbersome regulatory involvement as well. So there's a real reason for that. But when it comes to intellectual property as a whole, and my colleagues certainly correctly identified other carve-outs, the structure is large amount of the IP goes to Ascent except for very specific carve-outs. Thank you for the additional time, Your Honor. All right. Thank you both for both sides. I think you're, as in the other cases, I think your briefing and arguments were excellent. I know we interrogated you pretty good, at least for myself. I'm trying to understand it. And you both were very, very helpful. This matter will be submitted.